IN OPEN COURT

MAY 1 3 2022

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

v.                                                           Case No. 1:22-CR-0046-AJT

QUIN NGOC RUDIN,

Defendant.

**STATEMENT OF FACTS**

The United States and the defendant, QUIN NGOC RUDIN, stipulate that the allegations

in the two-count Criminal Information filed against him and the following facts are true and

correct.  The United States and the defendant further stipulate that had the matter gone to trial,

the United States would have proven the allegations in the Criminal Information and the

following facts beyond a reasonable doubt with admissible and credible evidence.

1.      From at least in or about May or June 2019 through at least in or about December

2021, in the Eastern District of Virginia and elsewhere, the defendant QUIN NGOC RUDIN did

knowingly and willfully conspire and agree with un-indicted co-conspirator 1 (UCC-1), un-

indicted co-conspirator 2 (UCC-2), and others to (1) to defraud the United States; and (2) commit

an offense against the United States namely wire fraud, in violation of 18 U.S.C. § 1343, all in

violation of 18 U.S.C. § 371.

2.      The conspiracy had two objects.  The first object was to impede, impair, obstruct,

and defeat the lawful government functions of the Internal Revenue Service ("IRS") of the

Department of the Treasury in the ascertainment, computation, assessment, and collection of

federal income taxes by preparing and filing false tax returns on behalf of professional athletes

seeking large tax refunds to which the athletes were not entitled.  The second object was to devise

and intend to devise a scheme and artifice to obtain money from financial institutions by submitting materially false applications for loans financed by the federal Paycheck Protection Program ("PPP") and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud, in violation 18 U.S.C. § 1343.

3.      It was a purpose of the conspiracy that the defendant and his co-conspirators obtained and tried to obtain large fees from the professional athletes for whom they obtained income tax refunds, for which the professional athletes were not entitled to receive, often in the amount of 30% of the refunds obtained.    Additionally, another purpose of the conspiracy was for the defendant and his co-conspirators to enrich themselves by obtaining PPP loan funds for businesses they controlled, as the businesses did not qualify for the loans or loan amounts sought and obtained.    Finally, it was a purpose of the conspiracy that the defendant and his co-conspirators obtained and tried to obtain fees from the business owners for whom they obtained fraudulently inflated PPP loans successfully, often in the amount of 30% of the PPP loans obtained.

4.      From on or about April 2020 through at least on or about December 2021, within the Eastern District of Virginia and elsewhere, the defendant having devised and intended to devise the scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as more fully described below in paragraphs 22 through 36, the defendant, knowingly transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce certain writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice; that is, on or about June 5, 2020, the defendant caused data from a PPP Loan Application for $1,512,290, to be submitted on behalf of Company 4, and sent from a Financial Institution - 3 server located outside of the Eastern District

2

of Virginia to the SBA E-Tran server in Sterling, Virginia, requesting authorization to fund the loan.

*Background*

5.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance expeditiously to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.   One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").   In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

*Entities*

6.      The defendant registered MANA TAX SERVICES ("MANA TAX") under the laws of Hawaii in 2018.   On or about May 21, 2018, UCC-2 was added as the Vice President/Director.   On or about April 14, 2021, the defendant was added as Secretary, Chief Financial Officer ("CFO"), and Director of MANA TAX.   MANA TAX purported to be a tax preparation business located in the greater Los Angeles, California area.

7.      On or about August 14, 2018, the defendant and co-conspirators of BD applied for an "EFIN" in the name of UCC-1 for MANA TAX to use.   The EFIN application lists MANA TAX's name and business address, which was the residence of UCC-1.

8.      Robinson and Associates, Inc. ("Robinson and Associates") was incorporated on or about April 5, 2018, under the laws of Hawaii.   MANA TAX sometimes did tax preparation work under the name of Robinson and Associates.

9.      UCC-2 was associated with Gulfstream Exchange Incorporated, later Gulfstream

3

Exchange Inc., ("Gulfstream Exchange") a Hawaiian Limited Liability Company created on or about April 5, 2018.   The defendant referred to Gulfstream Exchange as the parent company of MANA TAX.

10.   UCC-2 was also associated with Community Investment Corporation ("Community Investment Corp.") a Hawaiian corporation created on or about June 1, 2018.

*Criminal Conduct*

11.   The defendant, through MANA TAX, assisted in the preparation and filing of false income tax returns on behalf of a number of professional athletes.   These tax returns all reported substantial business losses and claimed large tax refunds from the IRS to which the athletes were not entitled.

12.   In or about May 2019, the defendant and UCC-2 met with Professional Athlete-7 in the greater Los Angeles, California area.   During this time, Professional Athlete-7 agreed to have MANA TAX prepare his tax returns.

13.   In or about June and/or July 2019, the defendant along with UCC-1, UCC-2, and other co-conspirators flew to Leesburg, Virginia to meet with Professional Athlete-7.   During this visit, at least one co-conspirator discussed with Professional Athlete-7 his tax returns and that MANA TAX would seek millions of dollars in tax refunds from the IRS.

14.   In addition, at least one co-conspirator discussed with Athlete-7 the possibility of referring other professional athletes to MANA TAX for tax return preparation services.   At the co-conspirator's request, Professional Athlete-7 spoke to other professional athletes at their practice facility located in the Eastern District of Virginia, he spoke to other athletes on the phone, and he texted with other athletes about MANA TAX.   Some of these communications occurred while at least one of the athletes was in the Eastern District of Virginia. Ultimately, several other

4

professional athletes whom Professional Athlete-7 spoke to engaged MANA TAX to prepare their tax returns.

15.    The athletes dealt mostly with the defendant or UCC-2.   In that regard, the defendant would text, email, or have phone calls with the athletes about the preparation of their tax returns and claims for refunds.

16.    The defendant and co-conspirators, through MANA TAX, not only filed new income tax returns for professional athlete clients, but also filed amended income tax returns for past years to correct what they falsely characterized as "errors" the athletes' previous accountants made, many of whom, if not all, were Certified Public Accountants.

17.    The defendant personally assisted in the preparation of the professional athletes' tax returns, which all listed MANA TAX as the return preparer.   One of the ways he and his co-conspirators effectuated the tax fraud scheme was to claim materially false and fabricated business and personal losses on the athletes' income tax returns.   Additionally, for at least two of the professional athletes, the tax returns claimed exorbitant moving expenses and fabricated farm losses.   Such false items formed the bases for large claims for tax refunds from the IRS that the athletes were not entitled to receive.   For tax returns the defendant did not personally prepare, the defendant oversaw the preparation of the documents and reviewed the returns prior to them being filed with the IRS.

18.    The defendant and his co-conspirators, through MANA TAX, willfully aided and assisted in the preparation and presentation to the IRS of Forms 1040, U.S. Individual Income Tax Returns, and Forms 1040-X, Amended U.S. Individual Income Tax Returns, for the taxpayers and calendar years set forth below, among others, knowing full well that the returns contained false and fraudulent statements as to material matters, in order to obtain large refunds to which the

taxpayers were not entitled:

| Taxpayer | Approximate Filing Date | Form | Year |
|---|---|---|---|
| Professional Athlete 1 | 9/4/19 | 1040 | 2017 |
| Professional Athlete 2 | 10/15/19 | 1040 | 2018 |
| Professional Athlete 2 | 5/31/21 | 1040 | 2019 |
| Professional Athlete 3 | 10/16/20 | 1040 | 2019 |
| Professional Athlete 4 | 9/17/19 | 1040-X | 2018 |
| Professional Athlete 4 | 11/16/20 | 1040 | 2019 |
| Professional Athlete 5 | 11/30/20 | 1040 | 2019 |
| Professional Athlete 5 | 12/14/20 | 1040 | 2018 |
| Professional Athlete 7 | 11/30/20 | 1040 | 2019 |
| Professional Athlete 8 | 8/10/20 | 1040 | 2019 |
| Professional Athlete 9 | 10/13/20 | 1040 | 2019 |

19.     After the defendant knowingly and willfully assisted in the preparation and filing of false tax returns for professional athletes, the IRS issued a number of large refund checks to the athletes, totaling millions of dollars.

20.     Generally, MANA TAX charged the professional athletes a fee of 30% of the income tax refunds they obtained. Additionally, the defendant and co-conspirators agreed that Professional Athlete-7 did not have to pay a fee on one of his income tax refunds checks because he referred other athletes to MANA TAX for similar services.

21.     The COVID-19 pandemic began while the defendant and his co-conspirators were engaged in the tax fraud scheme.   While continuing the tax scheme, the defendant, along with his co-conspirators, also used MANA TAX to apply for fraudulent PPP loans, which typically required the submission of IRS tax records in support of the applications.

22.     The defendant and his co-conspirators knowingly submitted, assisted in the submission of, and caused to be submitted, approximately 80 fraudulent PPP loans.

23.     The defendant submitted, or caused to be submitted, the following PPP loan applications, among others, which had material false representations:

6

| PPP Loan Applicant | Listed Authorized Representative | Date submitted (on or about) |
|---|---|---|
| Company 1 | Person A | 5/5/2020 |
| Gulfstream Exchange Incorporated | UCC-2 | 5/8/2020 |
| Mana Tax Services, Inc. | UCC-1 | 5/8/2020 |
| Company 2 | Person B | 5/14/2020 |
| Company 3 | Person C | 6/4/2020 |
| Company 4 | Person D | 6/5/2020 |
| Company 5 | Person E | 1/25/2021 |
| Company 6 | Person F | 3/10/2021 |
| Company 7 | Person B | 3/10/2021 |
| Gulfstream Exchange Incorporated | UCC-2 | 3/15/2021 |
| Robinson and Associates Inc. | UCC-1 | 3/15/2021 |
| Community Investment Corporation | UCC-2 | 3/16/2021 |
| Company 8 | Person G | 3/17/2021 |
| Company 9 | Person G | 3/24/2021 |

24.     The submission of the PPP loans caused interstate wire transmissions sent to and from the SBA's E-Tran server in Sterling Virginia, within the Eastern District of Virginia, in connection with the authorization of the loans.

25.     The defendant and co-conspirators referred, and directed others to refer, business owners to MANA TAX and/or Gulfstream Exchange for the purpose of applying for PPP loans. The defendant told business owners that Gulfstream Exchange would mentor them and provide a variety of services on how to receive financial assistance, including applying for PPP loans. The defendant, and his co-conspirators, including UCC-2, offered to assist, via Gulfstream Exchange and MANA TAX, the business owners in applying for PPP loans often in exchange for a fee, which typically was 30% of the obtained PPP loan value.

26.     The defendant assisted in the preparation of fraudulent PPP loan applications for businesses claiming grossly inflated number of employees and grossly inflated monthly payrolls costs. In order to complete the application, the defendant requested, or directed his co-conspirators to request, that the business owners provide him their bank account login

7

information so that the PPP loan applications could be prepared.

27.     In support of the false PPP applications, the defendant prepared and/or oversaw the preparation of false tax returns by co-conspirators and others.   Specifically, the defendant and co-conspirators prepared and caused to prepare Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return; Forms 941, Employer's Quarterly Federal Tax Return; and Forms 1120, U.S. Corporation Income Tax Return.

28.     Knowing that some of the businesses did not exist as of February 15, 2020, and therefore had not paid any salaries, payroll taxes, or independent contractors, the defendant and his co-conspirators falsely certified and caused to be certified that at least two businesses were in operation on February 15, 2020, and had employees that were paid salaries and payroll taxes or paid independent contractors, as reported on IRS Form(s) 1099-MISC.

29.     The defendant personally prepared and filed the following fraudulent PPP loans, as well as others, as described below:

   a.   Specifically, on or about May 8, 2020, the defendant applied for a PPP loan on behalf of MANA TAX for $730,932.   The defendant listed his brother, UCC-1, as the applicant and claimed MANA TAX had 125 employees and paid an average monthly payroll of $292,373.   In fact, MANA TAX only had a handful of employees.   To substantiate these amounts tax, fabricated tax returns were included with the loan application. Based on the material false representations, the financial institution funded the loan. The proceeds of the loan were deposited into a MANA TAX account controlled by UCC-2 and UCC-1.

   b.   Further, on or about June 5, 2020, the defendant applied for a PPP loan on behalf of Company 4 for $1,512,290. The defendant claimed Company 4 had 443

employees and paid average monthly payroll of $604,916.   To substantiate these amounts, fabricated tax returns were included with the loan application. Based on the material false representations, the financial institution funded the loan. Initially, the defendant told the business owner that the fee to MANA TAX would only be $7,500; however, once the loan was funded the defendant told the business owner the fee would be 30%.   The business owner was directed to pay the 30% fee, totaling $453,687, to Gulfstream Exchange, which was controlled by UCC-2.

    c.  On or about January 25, 2021, the defendant a submitted PPP loan on behalf of Company 5 for $1,995,642.   The owner of the business told the defendant that the business did not exist as of February 15, 2020.   Despite knowing that the business did not qualify for a PPP loan, the defendant claimed Company 5 had 263 employees and paid average monthly payroll of $798,257.   To substantiate these amounts, fabricated tax returns were included with the loan application. Based on the material false representations, the financial institution funded the loan. The business owner was directed to pay the 30% fee, totaling $598,000, to a company that was controlled by UCC-2.

30.    The defendant instructed UCC-1 how to prepare PPP loan applications and the supporting records, the fabricated tax returns used to substantiate the PPP funds requested. Additionally, the defendant oversaw UCC-1 and other co-conspirators who prepared the PPP loan applications and supporting records.

31.    The defendant and his co-conspirators, including UCC-1, UCC-2, and others, opened certain bank accounts for the PPP loan funds to be deposited and/or to receive the 30%

fee charged for the PPP loan applications.

32.     The defendant and his co-conspirators moved the proceeds of the PPP loans into other corporate entities for the purpose of concealing the fraud.

33.     The defendant called at least one financial institution posing as UCC-1 in order to access a bank account for which he did not have signature authority.

34.     To conceal the fraud, the defendant and his co-conspirators directed the business owners to pay the 30% fee to an entity other than MANA TAX, and often directed the payment be made via cashier's check.

35.     In order to conceal the 30% fee, the defendant directed and caused his co-conspirators to direct the business owners to notate on the check or wire detail of the 30% fee that the transfer of funds was related to "payroll" or "intercompany transfers" knowing that the transfer was not related to payroll or intercompany transfers.

36.     The defendant and his co-conspirators would go to bank branches in person to deposit the cashier's checks into bank accounts they controlled, to withdraw cash from bank accounts, which contained a portion of the 30% fee, and to have cashier's checks drawn on bank accounts, which contained a portion of the 30% fee.

37.     The parties agree that the total actual loss, for the tax fraud and PPP loan fraud, is between $25 million and $65 million.

**<u>Conclusion</u>**

38.     This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States.   It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

39.     The actions of the defendant, as recounted above, were in all respects knowing

and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date:   May 6, 2022

By:     _Kimberly M. Shartar_____

Kimberly M. Shartar
Kimberly R. Pedersen
Assistant United States Attorneys

David Zisserson
Assistant Chief
Tax Division, U.S. Department of Justice

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, QUIN NGOC RUDIN, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
QUIN NGOC RUDIN

I am defendant's attorney.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Brittany Davidson
Assistant Federal Public Defendant
Geremy Kamens,
Federal Public Defender
Attorneys for Quin Ngoc Rudin